## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GRAY GRUBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV62 |
| | ) | |
| NORFOLK SOUTHERN RAILROAD | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

This case comes before the Court for imposition of sanctions on the Court's motion under Federal Rule of Civil Procedure 16(f) in connection with the pretrial conference on December 22, 2017 (see Minute Entry dated Dec. 22, 2017), as well as for resolution of Defendant's Motion for Extension of Time to Complete Discovery and Mediation, and for the Filing of Dispositive Motions (Docket Entry 25 ("Extension Motion")). For the reasons that follow, the Court will deny the Extension Motion and will sanction Defendant by striking its Answer and ordering expense-shifting.

### BACKGROUND

After Plaintiff commenced this action (Docket Entries 1, 4), Attorneys Nicole A. Crawford and Justin Nathaniel Outling (both of Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. ("Brooks, Pierce")) appeared for Defendant (Docket Entries 5, 6). Defendant then answered (Docket Entry 9) and the parties filed a Joint Rule 26(f) Report proposing a discovery and mediation deadline of

October 31, 2017 (Docket Entry 12 at 2), which the Court adopted (Text Order dated May 8, 2017). Based on that discovery deadline, the Clerk (via Notice dated June 19, 2017) set the case for trial on July 9, 2018. (Docket Entry 14.)

Plaintiff, in turn, diligently pursued discovery, serving interrogatories and document requests on Defendant on May 30, 2017. (Docket Entries 24-3, 24-4.) On June 30, 2017, Plaintiff's counsel e-mailed this message to Crawford: "I think [Defendant's] discovery responses were due yesterday. When can we expect to receive them?" (Docket Entry 18-1 at 2.) Crawford promptly responded: "I have a tickler notice that they are due on [July 3, 2017]. I will double check with my associate when I get to the office this afternoon. In any event it is in progress for [July 3, 2017]." (Id. at 3 (emphasis added).)

Defendant, however, did not serve discovery responses by July 3, 2017; instead, on July 21, 2017, Crawford e-mailed counsel for Plaintiff as follows: "Sorry for the delay in getting back to you-I've been out since July 5. We're wrapping up responses but need your response on the protective order. The client feels very strongly that we have the order entered. Please let me know your position." (Id. at 4 (emphasis added).) Two business days later, counsel for Plaintiff agreed to Defendant's proposed protective order. (Id.) On July 27, 2017, the parties filed a Joint Motion

for Protective Order (Docket Entry 15) and, the next day, the Court entered their proposed Consent Protective Order (Docket Entry 16).

Despite the removal of that identified impediment to service of the (overdue) discovery responses and repeated inquiries from Plaintiff's counsel, Defendant still did not serve its responses. (See Docket Entry 18-1 at 5 (setting forth e-mail from Plaintiff's counsel to Crawford on August 18, 2017, reporting that "[s]omeone from [Crawford's] office called and promised [Plaintiff's counsel] discovery responses – but [he] still d[id]n't have them" and asking Crawford to "let [him] know where [they] stand please"), 6 (reflecting that, on August 29, 2017, Plaintiff's counsel re-sent e-mail from August 18, 2017, and requested that Crawford "[p]lease respond"), 7 (documenting that, on September 6, 2017, in an e-mail to Crawford, Plaintiff's counsel complained that he "ha[d] emailed and called [her] repeatedly and still [he] ha[d] no reply").) Nearly two months after entry of the Consent Protective Order, Crawford e-mailed Plaintiff's counsel, "[t]hank[ing him] for [his] patience" and "propos[ing]" to serve "[w]ritten [d]iscovery [r]esponses" by "9/19/17." (Id. at 8.)

When Defendant did not follow through on that commitment, Plaintiff's counsel e-mailed Crawford on September 25, 2017, seeking an explanation. (See id. at 9.) Upon evidently receiving an automated response indicating that Crawford "[wa]s out," Plaintiff's counsel immediately forwarded to Outling the e-mail

just sent to Crawford, along with a request that Outling "let [Plaintiff's counsel] know the status." (Id. at 10.) Outling has acknowledged receiving that e-mail and understanding that it "inquir[ed] of [him] about the status of discovery," but taking no action other than "provid[ing] the communication to [] Crawford for her to respond to Plaintiff's counsel." (Docket Entry 19-1 at 3.)

On September 26, 2017, Crawford sent this e-mail to Plaintiff's counsel: "My client reviewed the materials last night and I need to make revisions to the discovery responses we drafted. We are at . . . a corporate training opportunity until tomorrow afternoon and I've sent the material changes to my paralegal for execution." (Docket Entry 18-1 at 11 (emphasis added).) After three more weeks passed without service of the discovery responses, on October 18, 2017, Plaintiff's counsel again requested them from Crawford, who answered: "I'm still waiting for files from carrier – right now am only working off what the first firm passed on from OSHA investigation. My paralegal is finalizing batesing those and sending them today." (Id. at 13 (emphasis added).) Again, however, Plaintiff received no discovery responses, notwithstanding his counsel's persistent efforts to obtain voluntary compliance. (See id. at 18 (documenting e-mails from Plaintiff's counsel to Crawford on November 14 and 15, 2017, stating "Please give me a status update on your end re discover [sic] responses" and "I am trying to continue to be gracious, but I feat [sic] that it is

-4-

going to be at the expense of [Plaintiff]," respectively); Docket Entry 18-2 at 2 (reproducing e-mail from Plaintiff's counsel to Crawford on December 4, 2017, with this message: "On October 20, 2017 we talked at length . . . about what needed to happen in the event that the case did not settle the next Monday, October 23, 2017. We discussed the discovery owed by [Defendant] that was long long overdue as well as the witnesses that I asked to depose. Then, the mediation did not go forward, and despite my additional requests and follow-up, I have no discovery, no deposition dates and have not heard anything from you.").)[1]

Ultimately, Plaintiff's counsel sought judicial intervention on December 6, 2017. (Docket Entry 18.) The next day, the Court "set[] this case for a pretrial conference . . . for the purpose of 'controlling and scheduling discovery' and 'facilitating in other ways the just, speedy, and inexpensive disposition of the action.'" (Text Order dated Dec. 7, 2017 (quoting Federal Rule of Civil Procedure 16(c)(2)(F) and (P)).) That Text Order took note of "the apparent failures of Defendant to meet its litigation obligations" and, "[g]iven the circumstances, . . . require[d] the presence of all counsel of record at th[e] pretrial conference." (Id.)

---

[1] During that time-frame, Defendant moved (with Plaintiff's consent) for an extension of the discovery and mediation deadlines to December 30 or 31, 2017. (Docket Entry 17.) That motion cited as its basis "protracted health issues of Defendant's counsel and a family emergency during the discovery period, which counsel for the Plaintiff graciously accommodated . . . ." (Id. at 1.) The Court granted the motion and re-set the discovery deadline (and, by implication, the mediation deadline) to January 2, 2018 (the first business day after December 30 or 31, 2017). (Text Order dated Oct. 31, 2017.)

When the pretrial conference convened on December 13, 2017, Crawford (but not Outling) appeared for Defendant. (<u>See</u> Minute Entry dated Dec. 13, 2017;[2] <u>see also</u> Text Order dated Dec. 13, 2017 (requiring "Outling to show cause in writing . . . as to why he failed (A) to attend the Pretrial Conference held this day or (B) to seek leave not to attend").) In addressing Defendant's delinquency in serving discovery responses, Crawford made the following representations of note:

1) "I've had the perfect storm personally and professionally this year, with personal health issues, health issues for my daughter, [and] health issues for my senior partner who used to handle these [kinds of] cases for [Defendant]."

2) "I have not been able to attend to this case the way I should have."

3) "<u>I've had different internal counsel at [Defendant]. Three different internal counsel</u> and I'm not the normal counsel. My senior partner is."

4) "I've been moved into a . . . relationship position with [Defendant] that I'm not familiar with and that [Defendant is] not familiar with because [Defendant] has transitioned counsel."

---

[2] The Clerk's Office audio-recorded the pretrial conference on December 13, 2017, as well as its continuation on December 22, 2017. (<u>See</u> Minute Entry dated Dec. 13, 2017; Minute Entry dated Dec. 22, 2017.) In preparing this Memorandum Opinion, the undersigned Magistrate Judge used those recordings to confirm exactly what transpired, including (in some instances) by writing down verbatim quotations. The description that follows above includes some such quotations (with emphasis added) in order to provide as full a picture of the material facts as possible without delaying matters to obtain a transcript.

5) "<u>I have talked with [Defendant] about it</u> and am able to . . . get our discovery out by Friday [December 15, 2017]."

6) "<u>I have encouraged [Defendant] to move forward with settlement in this case, but I have not received a response</u> on that and <u>we've discussed amounts and what would be needed to try to settle this case</u>, but I cannot make a representation today that the case will settle before we move into dispositive motions."

Plaintiff's counsel, in turn, expressed empathy for Crawford's health-related issues and agreed to work with Defendant and the Court to try to get necessary pretrial work done in advance of the July 2018 trial date, if possible;[3] however, he also stated:

> It appears to me that this is as much of a client problem as it is a health problem.  The files were not transmitted to Ms. Crawford as late as September by my review of her e-mails to me when the discovery responses were due in June.  And so, if this is a client problem, my view of the world is very different.

In light of Crawford's commitment that (based on prior consultation with Defendant) Plaintiff would receive discovery responses by December 15, 2017, as well as the willingness of Plaintiff's counsel to immediately review those responses to decide what further discovery Plaintiff would want to take in light of Defendant's responses, the Court continued the conference to December 22, 2017, to assess (at that point) whether necessary follow-up discovery by Plaintiff could occur in a manner that did

---

[3] Plaintiff's counsel theorized that, after receiving Defendant's discovery responses, Plaintiff likely would serve additional written discovery and would notice multiple depositions, which would require at least two months to complete.

not threaten the long-set trial date. (See Minute Entry dated Dec. 13, 2017; Text Order dated Dec. 13, 2017.) Further, given Crawford's comments regarding Defendant's failure to respond to her inquiries about settlement, the Court "expand[ed] the purposes of the conference to include settling the case. . . . In addition, the Court require[d] that a representative of Defendant with authority to settle this case be present . . . to consider possible settlement." (Text Order dated Dec. 13, 2017 (internal brackets, citation, ellipses, and quotation marks omitted) (quoting Federal Rule of Civil Procedure 16(c)(1) & (2)(I)).)[4]

The afternoon before the scheduled resumption of the pretrial conference, Defendant (through Crawford) filed a Motion for Leave Not to Appear and for Continuance. (Docket Entry 20.) That motion recited that, earlier that day, Crawford "was seen at Duke University Medical Center and scheduled for an emergency medical procedure at Durham Regional Hospital on December 22, 2017." (Id. at 1.) An attachment to that motion, entitled "DukeHealth Visit Summary" confirms a "Hospital Visit" by Crawford on December 21, 2017, with this "Follow-up Information": "You are released to return to work and normal physical activities today, 12/21, 2017, and scheduled for surgery on 12/22, 2017 at 11:30 A.M. at Durham

_____

[4] Crawford asked that the conference not resume until some time in January 2018, because her daughter only recently returned home from an extended hospital stay. Although sympathetic to Crawford, the Court rejected that request and made it clear that, if personal demands precluded her appearance on December 22, 2017, she must seek leave not to appear and Outling or some other attorney from Brooks, Pierce must come to the conference prepared to move the case forward.

Regional Hospital." (Docket Entry 20-1 at 1.) Based on that circumstance, Crawford sought "leave not to appear at the continued Pre-Trial Conference on December 22, 2017." (Docket Entry 20 at 1.) "Additionally, [Defendant] request[ed] a continuance of the Pre-Trial Conference set for December 22, 2017 in this matter because of the inability of [Crawford] to attend the Pre-Trial Conference and perceived failure of [Crawford] to adequately represent [Defendant's] interests in this matter." (Id.; see also id. at 2 ("[Defendant] very respectfully requests a continuance of the Pre-Trial Conference to January 8, 2018, or such approximate date thereafter as is convenient for Plaintiff's counsel, in order for [Defendant] to assess the case and obtain appropriate representation in this matter before the Court.").) "Counsel for Plaintiff d[id] not consent to th[at m]otion." (Id. at 2.)

The Clerk referred the motion to the Court shortly before the time set for the conference to reconvene (see Motions Referred Entry dated Dec. 22, 2017) and the Court "oral[ly] order[ed] on the record during the continued pretrial conference held th[at] day [the] grant[] in part and den[ial] in part [of the motion]. To the extent [it] sought leave for [] Crawford not to appear . . . due to a medical issue, the Court granted [the m]otion and excused [her] from appearing. To the extent [it] sought a continuance of the conference . . . because of [] Crawford's unavailability and Defendant's desire to assess the case and obtain appropriate

-9-

representation, the Court denied [the m]otion." (Text Order dated Dec. 22, 2017 (internal quotation marks omitted).)

At the resumed conference on the morning of December 22, 2017, Outling appeared "as counsel for [D]efendant. [However, a r]epresentative from [Defendant] failed to appear." (Minute Entry dated Dec. 22, 2017.) As to the cause for that failure, Outling could report only that "Crawford explained to [Outling] that [Crawford's] client representative for [Defendant wa]s out as of [the] week [ending December 15, 2017,] and w[ould] be out through the beginning of the new year." The Court expressed its dissatisfaction with that explanation and indicated that it would recess the conference until the afternoon for Outling to gather more information about what and when Defendant knew about its obligation to appear. When Outling voiced reservations about whether he could obtain any such information due to his lack of any direct point-of-contact with Defendant and the reported absence from the office of Defendant's designated representative for this case, the Court encouraged Outling to seek out more senior attorneys at Brooks, Pierce who maintained relationships with Defendant and to attempt (with the assistance of those attorneys) to reach employees of Defendant with supervisory authority over its designated representative for this case.

Following that recess, Outling advised the Court that, instead of enlisting more senior Brooks, Pierce attorneys in an effort to

communicate directly with Defendant, he contacted Crawford at the hospital.  According to Outling:

> Crawford advised that immediately after the hearing on the 13th [of December], she contacted [Defendant].  The following day, [] Crawford became unavailable due to medical reasons until Tuesday of th[e present] week [December 19, 2017].  On [that day], she was informed that her contact at [Defendant] . . . would be out of the office until the beginning of [2018]. Further, [Crawford was informed] that, given that this hearing was the Friday before Christmas, there would not be another person who could fill in that person's place.

In addition, the Court learned that, contrary to the commitment made at the conference on December 13, 2017, Defendant did not serve its discovery responses on December 15, 2017 (and indeed those responses still remained unserved, with Outling now promising that he would take steps to get Plaintiff "the discovery that [he] require[s] as soon as possible after the holiday, Christmas, on Monday [December 25, 2017]," although he denied any present knowledge about the facts of the case).

Given those circumstances, on its own motion under Federal Rule of Civil Procedure 16(f), the "Court conclude[d D]efendant [wa]s in violation of [the] Text Order entered [December 13, 2017, continuing the conference, expanding its purposes to include settlement, and requiring a representative of Defendant with authority to settle to appear at the continued conference,] and that sanctions [we]re warranted."  (Minute Entry dated Dec. 22,

2017.)[5]  As a result, the Court ordered Defendant "to file [a] memorandum . . . regarding the appropriate sanctions . . . ." (Id.; see also id. (allowing Plaintiff to reply).)

Defendant submitted its sanctions-related memorandum (Docket Entry 22), along with a Declaration from the Managing Partner of Brooks, Pierce (Docket Entry 23), and Plaintiff replied (Docket Entry 24).  Subsequently, on January 17, 2018, Defendant filed its Extension Motion.  (Docket Entry 25.)  "Plaintiff's counsel does not consent to [the Extension Motion]."  (Id. at 3.)

DISCUSSION

The Extension Motion asks the Court "to (1) extend the close of the discovery period to February 28, 2018; (2) extend the deadline to complete mediation to March 7, 2018; and (3) extend the time within which the parties may file dispositive motions to March 26, 2018."  (Id. at 1.)  As the Extension Motion acknowledges (and the Background section documents), "[t]he period for the completion of discovery in this case ended on January 2, 2018.  The time for completion of mediation ha[d] also expired [on January 2, 2018]."

---

[5] During the conference, the Court expressly found, "on its own motion," grounds for sanctions under all three paragraphs of Federal Rule of Civil Procedure 16(f)(1) (i.e., failure by a party to appear at a pretrial conference, substantial unpreparedness of a party and its attorney to participate in a pretrial conference, and failure to obey a pretrial order).  Plaintiff's counsel asked that the Court "strike [Defendant's] Answer" and "enter default."  Outling argued that Defendant should not face sanctions and that the Court instead should sanction only Crawford (or "perhaps Brooks, Pierce").  The Court explained that any argument attributing culpability for the violation(s) at issue solely to Crawford (or Brooks, Pierce) "would require taking evidence."

(Id.)  Defendant, however, did not file the Extension Motion until January 17, 2018.  (See id. at 3.)[6]

Moreover, Defendant failed to file a brief with its untimely Extension Motion.  (See Docket Entries dated Jan. 17, 2018, to present.)  "All motions, unless made during a hearing or at trial, . . . shall be accompanied by a brief except as provided in section (j) of [Local Rule 7.3]."  M.D.N.C. LR 7.3(a).  The cross-referenced section does not exempt out-of-time motions for extension of time from the brief-filing requirement, but rather only motions "for extension of time . . . made before the expiration of the period originally prescribed or as extended by previous orders[.]"  M.D.N.C. LR 7.3(j).  "A motion unaccompanied by a required brief may, in the discretion of the Court, be

_____

[6] By Local Rule, "dispositive motions and supporting briefs must be filed and served within 30 days following the close of the discovery period."  M.D.N.C. LR 56.1(b).  Given the discovery deadline of January 2, 2018, the dispositive motions deadline in this case fell on February 1, 2018.  That deadline thus had not passed when Defendant filed the Extension Motion.  However, "[a]ny party who intends to file a motion for summary judgment, or any other dispositive motion, must file and serve notice of intention to file a dispositive motion within 14 days following the close of the discovery period."  M.D.N.C. LR 56.1(a).  Defendant filed no such notice by the applicable deadline of January 16, 2018; accordingly, at the time Defendant filed its Extension Motion, it needed to obtain belated relief from the dispositive motions notice deadline in order to file a proper dispositive motion.  The analysis that follows above regarding the implications of the briefing requirement of Local Rule 7.3(a) and the excusable neglect standard in Federal Rule of Civil Procedure 6(b)(1) therefore applies not only to Defendant's request to extend the discovery and mediation deadlines, but also to its request to extend the dispositive motions deadline.  Furthermore, the Extension Motion would have the Court extend the dispositive motions deadline based solely upon Defendant's requested extensions of the discovery and mediation deadlines.  (See Docket Entry 25 at 2 ("In view of the proposed extension of the time to complete discovery and mediation, [Defendant] requests that the deadline [for dispositive motions] be moved to March 26, 2018.").)  Because the Court will not extend the discovery and mediation deadlines, good cause does not exist under Federal Rule of Civil Procedure 6(b)(1) for the requested extension of the dispositive motions deadline (even if the briefing requirement of Local Rule 7.3(a) and the excusable neglect standard in Federal Rule of Civil Procedure 6(b)(1) do not apply to that particular request).

summarily denied."  M.D.N.C. LR 7.3(k).  In this instance, the Court exercises its discretion to summarily deny the Extension Motion pursuant to Local Rule 7.3(k).

Alternatively, the Court denies the Extension Motion for failure to make the requisite showing under the Federal Rules of Civil Procedure.  Specifically, "[w]hen an act may or must be done within a specified time, the [C]ourt may, for <u>good cause</u>, extend the time . . . on motion made after the time has expired if the party failed to act because of <u>excusable neglect</u>."  Fed. R. Civ. P. 6(b)(1) (emphasis added).  Although this Rule nominally requires a showing of both "good cause" and "excusable neglect," in this context, the United States Court of Appeals for the Fourth Circuit effectively has collapsed those requirements into a single inquiry. <u>See</u> <u>Lovelace v. Lee</u>, 472 F.3d 174, 203 (4th Cir. 2006) ("A district court has discretion to grant an enlargement of time 'upon motion made after the expiration of the specified period where the failure to act was the result of excusable neglect.' Fed. R. Civ. P. 6(b). We find no abuse of discretion here.  The district court had a reasonable basis for finding good cause (or excusable neglect) . . . ." (internal ellipsis omitted)).  That approach makes sense because, whereas courts have described the "good cause" standard as "non-rigorous," <u>Ahanchian v. Xenon Pictures, Inc.</u>, 624 F.3d 1253, 1259 (9th Cir. 2010), "liberal," <u>Coon v. Grenier</u>, 867 F.2d 73, 76 (1st Cir. 1989), and "not . . . particularly demanding,"

Stark-Romero v. National R.R. Passenger Co., 275 F.R.D. 544, 547 (D.N.M. 2011), the Fourth Circuit has declared that "'[e]xcusable neglect' is not easily demonstrated," Thompson v. E.I. DuPont Nemours & Co., Inc., 76 F.3d 530, 534 (4th Cir. 1996).

Accordingly, the Court will focus on determining whether Defendant has shown "excusable neglect," an inquiry the United States Supreme Court has described as "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). "These include . . . [1] the danger of prejudice to the [opposing party], [2] the length of the delay and [3] its potential impact on judicial proceedings, [4] the reason for the delay, including whether it was within the reasonable control of the movant, and [5] whether the movant acted in good faith." Id. In reviewing these factors, the Court must consider not only Defendant's conduct, but also "whether [its] attorney[s], as [its] agent[s], did all [they] reasonably could to comply with the [deadline]." Id. at 396; see also id. at 396–97 (taking note of prior decisions, "[i]n other contexts, . . . [holding] that clients must be held accountable for the acts and omissions of their attorneys" in declaring that, "in determining whether [a party's] failure to [meet a deadline] was excusable, the proper focus is upon whether the neglect of [the party] and [its] counsel was excusable" (emphasis omitted)).

Considering the <u>Pioneer</u> factors in the context of this case, the Court first observes that Defendant's showing as to the reason for its request to extend the discovery and dispositive motions deadlines (the most important factor, <u>see</u> <u>Thompson</u>, 76 F.3d at 534) weighs against relief. In that regard, the Extension Motion acknowledges that Defendant "failed to comply with its discovery obligations" (Docket Entry 25 at 2) and asserts in conclusory fashion that "[t]he fault for such failure lies with counsel and not [Defendant]" (<u>id.</u>). Even if the Court accepted that latter bald assertion (which the Court does not), the Fourth Circuit has held that "run-of-the-mill inattentiveness by counsel" does not support a finding of excusable neglect, <u>Thompson</u>, 76 F.3d at 535.

Further, extending the discovery and dispositive motions deadlines as Defendant has requested would deprive the Court of a reasonable amount of time to resolve any dispositive motions before the long-standing trial date and related final pretrial filing deadlines. Specifically, under Defendant's proposal, dispositive motion briefing would extend through May 9, 2018, <u>see</u> M.D.N.C. LR 56.1(d) (allowing 30 days after filing of summary judgment motions for filing of response briefs and 14 days thereafter for filing reply briefs), leaving the Court only two months to resolve dispositive motions before the scheduled trial (and even less time before the final pretrial disclosure deadlines imposed by Federal Rule of Civil Procedure 26(a)(3)(B) and Local Rule 40.1(c)).

The Court (per United States District Judge Catherine C. Eagles) recently well-explained the impropriety of such extensions:

> The Local Rules are designed to give the parties time to brief and the Court time . . . to decide any summary judgment motions before the disclosure requirements of [Federal] Rule [of Civil Procedure] 26(a)(3) and [Local Rule] 40.1(c) come into play. . . . [The proposed discovery extension] means the summary judgment briefing would not be complete until . . . only two months before pretrial disclosures are due. . . . [T]his time frame places undue time pressures on the Court and makes it likely that the parties w[ould have to] begin serious trial preparation before it is known that a trial will happen or whether the issues will be narrowed by summary judgment rulings. As often happens when the discovery period is extended, one or both parties may seek a continuance to avoid that result. If the trial has to be continued, the delay harms all parties. If the case is not continued, the parties will prepare for trial without the benefit of a summary judgment decision.

Qayumi v. Duke Univ., No. 1:16CV1038, 2017 WL 6626193, at *3 (M.D.N.C. Dec. 28, 2017) (unpublished). In other words, Defendant's proposed extension of the discovery and dispositive motions deadlines portends possible serious prejudice to Plaintiff's interest in maintaining an agreed-upon and judicially sanctioned end-point for this case, as well as an adverse impact on the Court's proceedings, and thus constitutes a delay of unreasonable length under the circumstances, particularly given the absence of an acceptable reason for such delay (even if the Court assumed Defendant acted in good faith – a questionable assumption to make given the excessive delay in providing basic discovery).[7]

_____

[7] The Extension Motion notes that, "[a]t the December 13, 2017 hearing in this matter, before the expiration of the discovery period, the parties and the Court discussed a potential extension of the discovery period to late February

Simply put, Defendant has not met its burden under Federal Rule of Civil Procedure 6(b)(1) to obtain the requested extensions of the discovery and dispositive motions deadlines. Nor has Defendant shown excusable neglect so as to permit the Court to extend the mediation deadline. Again, Defendant has not tendered a reason for the delay in conducting mediation that would support relief, as its Extension Motion once more merely declares without support that "the fault for [Defendant's] failure [to submit to mediation in a timely manner] lies with counsel and not [Defendant]" (Docket Entry 25 at 2). See Thompson, 76 F.3d at 535 (ruling that "run-of-the-mill inattentiveness by counsel" does not advance excusable neglect argument). In addition, requiring mediation now – after (as the Background section details) Defendant's representative failed to appear at the continuation of the pretrial conference to discuss settlement (as ordered after

_____

or early March 2018." (Docket Entry 25 at 2.) The Extension Motion fails to mention, however, that such discussion rested on the premise that Defendant would serve its overdue discovery responses by December 15, 2017, that Plaintiff's counsel would review those responses by December 22, 2017, to determine what additional discovery Plaintiff would need to take, and that (at the continuation of the pretrial conference on December 22, 2017) the parties and the Court would assess whether such discovery reasonably could occur within the approximate 60-day period that Plaintiff forecast as the minimum time needed, as well as whether allowing discovery to extend that far (at that point, to late February or early March 2018) would imperil the July 2018 trial date. Of course, Defendant did not serve its discovery responses by December 15, 2017; instead, according to Defendant, its "delinquent discovery responses were provided to Plaintiff on January 5, 2018" (id.). Even if Plaintiff's counsel could have reviewed those responses in a week, discovery would have had to extend to at least mid-March 2018 to allow Plaintiff the 60 days or more he reasonably predicted he would need to conduct follow-up discovery. A discovery deadline extension of that sort (particularly if coupled with Defendant's request for a related extension of the dispositive motions deadline) would leave the Court only about a month between the conclusion of dispositive motion briefing and the trial date. For reasons outlined above, the Court deems such an arrangement untenable.

Crawford reported that Defendant had not responded to her recommendation that it pursue settlement) – would prejudice Plaintiff by forcing him to spend more time and money chasing the illusive prospect that Defendant would engage in settlement discussions. Finally, given that the Court previously extended the mediation deadline, the further delay proposed by Defendant qualifies as unreasonable in length. With those three factors weighing against a finding of excusable neglect, even if the request to extend time for mediation would not negatively impact judicial proceedings and the Court somehow deemed Defendant's prior failure to mediate a mere good-faith mistake, the <u>Pioneer</u> factors, on balance, tip decidedly against Defendant's position.

All of the foregoing considerations compel the Court to deny the Extension Motion.

Turning to the issue of sanctions:

[O]n its own, the [C]ourt may issue any <u>just orders</u>, including those authorized by [Federal] Rule [of Civil Procedure] <u>37(b)(2)(A)(ii)-(vii)</u>, if a party or its attorney:

    (A) fails to appear at a scheduling or other pretrial conference;

    (B) is substantially unprepared to participate . . . in the conference; or

    (C) fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f)(1) (emphasis added). As set out in the Background section, the Court found, on its own motion, that

sanctions should attach under all three of the above-quoted paragraphs of Federal Rule of Civil Procedure 16(f)(1), because Defendant did not appear at the pretrial conference on December 22, 2017, Defendant and its attorney were substantially unprepared to participate in the pretrial conference on December 22, 2017, and Defendant failed to obey the Court's Text Order dated December 13, 2017, requiring a representative with settlement authority to appear at the conference on December 22, 2017.

Regarding the range of sanctions generally available in this context, the provisions of Federal Rule of Civil Procedure 37(b)(2)(A) cross-referenced in Federal Rule of Civil Procedure 16(f)(1) identify these options:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A) (emphasis added); see also Fed. R. Civ. P. 16(f)(2) ("Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the

reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." (emphasis added)).

Defendant "requests that any sanctions be limited to an award of the fees and expenses incurred by Plaintiff in attending the December 22, 2017 hearing, and that such sanctions be imposed solely on either [] Crawford or on the Brooks Pierce law firm." (Docket Entry 22 at 6; see also id. ("Such an award (together with an extension of the discovery period [to February 28, 2018]) would remedy any harm suffered by Plaintiff.").)  The Fourth Circuit "ha[s] instructed district courts to apply a four part test when determining appropriate sanctions under [Federal Rule of Civil Procedure] 37(b) [as incorporated into Federal Rule of Civil Procedure 16(f)(1)]:  '(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice [its] noncompliance caused [its] adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.'"  Young Again Prods., Inc. v. Accord, 459 F. App'x 294, 301 (4th Cir. 2011) (ellipsis omitted) (emphasis added) (quoting Mutual Fed. Sav. and Loan Ass'n v. Richards & Assoc., Inc., 872 F.2d 88, 92 (4th Cir. 1989)).  Application of that test to the record facts leads the Court to order as the proper sanction in this instance, in addition to expense-shifting, the striking of

Defendant's Answer (which will require the Clerk to enter a default under Federal Rule of Civil Procedure 55(a), which then will allow Plaintiff to move for a default judgment and to request a hearing on damages under Federal Rule of Civil Procedure 55(b)(2)).[8]

To begin, the Court finds that, in addition to the fact that Outling came the pretrial conference on December 22, 2017, totally unprepared to address any of the objects of the conference identified in the Text Orders dated December 7 and 13, 2017 (i.e., controlling and scheduling discovery, facilitating a proper and efficient disposition, and settling the case), Defendant willfully failed to send a representative with settlement authority to the conference, in direct contravention of the Court's Text Order dated December 13, 2017. In that regard, as detailed in the Background

---

[8] As set forth in Footnote 5, when the Court raised the issue of sanctions at the conference on December 22, 2017, Plaintiff's counsel did not request entry of a default judgment, but rather only asked that the Court "strike [Defendant's] Answer" and "enter default." Plaintiff's Memorandum regarding Imposing Sanctions, in contrast, asserts that "sanctions other than striking the answer and entry of default judgment would not be effective." (Docket Entry 24 at 4 (emphasis added).) The entry of default constitutes a pretrial matter that does not dispose of a claim; as a result, courts have treated motions pertaining to entry of default as subject to adjudication by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). See, e.g., Bailey v. United Airlines, 279 F.3d 194, 204 (3d Cir. 2002); L & M Cos., Inc. v. Biggers III Produce, Inc., No. 3:08CV309, 2010 WL 1439411, at *8 & n. 3 (W.D.N.C. Apr. 9, 2010) (unpublished). Conversely, "[a] motion for default judgment is a dispositive motion for purposes of the Magistrate Judges Act." Baltimore Line Handling Co. v. Brophy, 771 F. Supp. 2d 531, 534 (D. Md. 2011). Moreover, upon entry of default, because Plaintiff's Complaint does not seek "a sum certain or a sum that can be made certain by computation," Fed. R. Civ. P. 55(b)(1), Plaintiff "must apply to the [C]ourt for a default judgment," Fed. R. Civ. P. 55(b)(2), and the Court "may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages," id. Under these circumstances, the undersigned Magistrate Judge elects to construe his own motion (which serves as the basis for imposition of sanctions) to extend only so far as to permit the striking of Defendant's Answer (resulting in the entry of default) and not to the final step of entry of a default judgment (which should await further application by Plaintiff (in the form of a motion) and any hearing on damages deemed necessary).

section, on December 22, 2017, after the Court took an extended recess for the specific purpose of allowing Outling (and/or other Brooks, Pierce attorneys) to inquire directly of Defendant as to exactly when and what it knew about its obligation to attend the conference that day, Outling chose to report to the Court only that, according to Crawford:

1) on December 13, 2017, Defendant received notice of the Court's directive requiring an appearance by a representative of Defendant at the conference on December 22, 2017; and

2) on December 19, 2017, Defendant informed Crawford that it would not to send anyone to the conference on December 22, 2017, because (A) the employee with responsibility for this case took off from work in mid-December 2017 and would not return to the office until early January 2018, and (B) none of Defendant's other employees would attend a proceeding on the Friday before Christmas.

Defendant's Memorandum regarding Imposition of Sanctions seeks to avoid the foregoing concession of willfulness by stating that, "[t]o the extent that statements have been made to the Court that [Defendant] was aware prior to December 27[, 2017] . . . that it had been ordered to appear on December 22, 2017, such statements were incorrect." (Docket Entry 22 at 3 n.1.) In place of the prior unambiguous statements (from Crawford through Outling) confirming that Defendant consciously chose not to send a representative to the conference, Defendant now has offered this

equivocal statement:   "Based on all information available to [Brooks, Pierce's General Counsel and its] Managing Partner, [Defendant] itself was unaware . . . that it had been ordered to appear at the December 22, 2017 hearing prior to December 27, 2017 when [] Crawford met with [Defendant's] General Counsel." (Id. at 2-3 (internal footnote omitted) (emphasis added).)  The Court deems that statement insufficient to establish an absence of bad faith, particularly given that, on December 22, 2017, the Court expressly advised Outling that any argument seeking to attribute culpability for Defendant's failure to appear at the conference that day solely to Crawford (or Brooks, Pierce) "would require taking evidence."

Notably, Defendant has not submitted any evidence from Crawford (much less evidence from Crawford disavowing her representations to the Court (through Outling) about her communications with Defendant on December 13 and 19, 2017); nor has Defendant come forward with evidence from any of its own employees. (See id. at 1-8.)[9]  Instead, by way of evidence, Defendant has offered only the Declaration of Reid L. Phillips (Brooks, Pierce's Managing Partner). (Docket Entry 23.)  In pertinent part, that Declaration relates the following:

1) "[a]fter 5:00 pm on the afternoon of December 22, 2017, [] Outling came to [Phillips's] office and reported to [Phillips], for the first time, that [Brooks, Pierce] had failed to provide

_____

[9] Defendant also did not request an evidentiary hearing to present such evidence.  (See Docket Entry 22 at 1-8.)

discovery in this case, that sanctions had been imposed [against Defendant's counsel under the Court's Local Rules in connection with the pretrial conference on December 13, 2017], and that a brief was due on December 29, 2017 relating to the potential for additional sanctions [under Federal Rule of Civil Procedure 16(f)(1), in connection with the pretrial conference on December 22, 2017]" (id. at 2);

2) "[Phillips] immediately informed [Brooks, Pierce's] General Counsel [Robert King]" (id.);

3) "[King] and [Phillips] then investigated the circumstances that led to the current situation" (id.);

4) "[Phillips] ha[s] communicated several times with Roger Petersen, the General Counsel for [Defendant]" (id. at 3);

5) "[Phillips] understand[s] that [] Crawford met with [] Petersen on Wednesday, December 27, [2017,] apologized for her mistakes, and took full responsibility for the circumstances" (id. at 4; see also id. ("I confirmed this in a conversation with Mr. Petersen later on the 27th."));

6) "Crawford has acknowledged that the failings in this case – including . . . to arrange for a representative of [Defendant] to attend the December 22, 2017 hearing – were her own" (id.); and

7) "[Phillips] understand[s] that [Defendant] was unaware of . . . the need to attend the December 22, 2017 hearing until [] Crawford so informed [] Petersen on December 27, 2017" (id.; see

also id. ("I have confirmed with Mr. Petersen that December 27, 2017 was the first time that he learned of these issues.")).

None of those statements by Phillips (including his second- or third-hand recounting of Crawford taking "full responsibility for the circumstances" and acknowledging that the failure "to arrange for a representative of [Defendant] to attend the December 22, 2017 hearing [was] her own" or of Petersen's denial of prior personal knowledge of Defendant's duty to appear on December 22, 2017) directly contradicts Crawford's earlier representation to the Court (through Outling) that, on December 13, 2017, Crawford notified someone from Defendant about its obligation to send a representative to the conference on December 22, 2017, and that, on December 19, 2017, someone from Defendant notified Crawford that it would not send anyone, because its designated representative for this case had taken leave from work until January 2018 and no other employee would attend a conference on the Friday before Christmas.

With Crawford's initial account of those specific matters effectively unrebutted, the Court finds that the first and third factors relevant to sanctions (i.e., "whether the noncomplying party acted in bad faith . . . [and] the need for deterrence of the particular sort of noncompliance," Young Again, 459 F. App'x at 301 (internal quotation marks omitted)), strongly favor the imposition of a heavy sanction against Defendant. See, e.g., id at 303 ("[The Fourth Circuit] ha[s] previously found that 'stalling and

ignoring the direct orders of the court with impunity' is 'misconduct' that 'must obviously be deterred.'" (quoting Mutual Fed., 872 F.2d at 93)); D'Orazio v. OSD Holdings, Inc., No. 5:16CV11D, 2017 WL 888225, at *2 (E.D.N.C. Mar. 6, 2017) (unpublished) (finding "bad faith" where party "willfully refus[ed] to participate"); Plant v. Merrifield Town Ctr. Ltd. P'ship, Nos. 1:08CV374(TSE/JFA), 1:08CV566, 2009 WL 6082878, at *6 (E.D. Va. Dec. 23, 2009) (unpublished) ("In this circuit, bad faith includes willful conduct, where [a party] 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it. . . . If the court were to fail to [impose a serious sanction] at this juncture, it would send the wrong message to recalcitrant parties and their counsel: that defiance goes unpunished. Thus, the need to deter this type of behavior is great." (quoting Rabb v. Amatex Corp., 769 F.2d 996, 1000 (4th Cir. 1985))), adopted in relevant part, 711 F. Supp. 2d 576, 584-88 (E.D. Va. 2010).[10]

---

[10] The Court thus has found, based on the existing record, that Defendant bears direct responsibility for noncompliance with the Court's directives regarding the pretrial conference on December 22, 2017. To the extent Crawford, Outling, and/or Brooks, Pierce also share responsibility for such noncompliance:

> There is certainly no merit to the contention that [imposition of a severe sanction against Defendant] because of [its] counsel's unexcused conduct imposes an unjust penalty on the client. [Defendant] voluntarily chose th[ese] attorney[s] as [its] representative in the action, and [Defendant] cannot now avoid the consequences of the acts or omissions of [its] freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of [its] lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) (quoting Smith v. Ayer, 101 U.S. 320, 326 (1879)); see also id. at 634 n.10 ("[I]f an attorney's conduct

Likewise, the remaining two factors, i.e., "the amount of prejudice [Defendant's] noncompliance caused [its] adversary . . . and [] the effectiveness of less drastic sanctions," Young Again, 459 F. App'x at 301 (internal quotation marks omitted), also require more than simply expense-shifting and an extension of the discovery period. At most, "[a]n award of monetary sanctions to cover the costs expended [by Plaintiff] in dealing with [Defendant's] violations would simply place the parties close to where they stood [monetarily] had the violation not occurred. Such an award would not account for the time lost in the case or the cost to the [C]ourt, nor would it provide a deterrent effect. An additional sanction is necessary." Beach Mart, Inc. v. L & L Wings, Inc., 302 F.R.D. 396, 415 (E.D.N.C. 2014). Finally, the Court rejects Defendant's suggestion that, along with expense-shifting, "an extension of the discovery period . . . would remedy any harm suffered by Plaintiff" (Docket Entry 22 at 6). For reasons discussed above in connection with the Extension Motion, any such extension not only would imperil the trial date, but also would deprive Plaintiff of sufficient time to conduct necessary follow-up discovery (given that Defendant did not serve its delinquent discovery responses until January 5, 2018).

---

falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But [withholding significant sanctions against a party] merely because [it] should not be penalized for the omissions of [its] own attorney would be visiting the sins of [that party's] lawyer upon the [opposing party].").

In sum, the Court's review establishes that Defendant's violations under Federal Rule of Civil Procedure 16(f)(1) demand the imposition of significant sanctions, specifically the striking of its Answer, as well as expense-shifting.[11]

CONCLUSION

Defendant's Extension Motion does not comply with Local Rule 7.3 and does not satisfy Federal Rule of Civil Procedure 6(b)(1). Moreover, Defendant's "fail[ure] to appear at [the December 22, 2017] pretrial conference," Fed. R. Civ. P. 16(f)(1)(A), the fact that Defendant and its counsel were "substantially unprepared to participate . . . in th[at] conference," Fed. R. Civ. P. 16(f)(1)(B), and Defendant's "fail[ure] to obey [the Court's December 13, 2017] pretrial order," Fed. R. Civ. P. 16(f)(1)(C), all warrant the striking of Defendant's Answer (Docket Entry 9), pursuant to Federal Rule of Civil Procedure 16(f)(1) (and, by incorporation, Federal Rule of Civil Procedure 37(b)(2)(A)(iii)), and require entry of an order that Defendant and its counsel "pay the reasonable expenses – including attorney's fees – incurred [by Plaintiff] because of [Defendant's] noncompliance with [Federal Rule of Civil Procedure 16]," Fed. R. Civ. P. 16(f)(2).

---

[11] To the extent Defendant has argued that the exceptions in Federal Rule of Civil Procedure 16(f)(2) should insulate it (as opposed to its counsel) from expense-shifting, the Court rejects that argument for the same reasons the Court deemed expense-shifting alone an insufficient sanction.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Extension of Time to Complete Discovery and Mediation, and for the Filing of Dispositive Motions (Docket Entry 25) is **DENIED.**

**IT IS FURTHER ORDERED** that, pursuant to Federal Rules of Civil Procedure 16(f)(1) and 37(b)(2)(A)(iii), Defendant's Answer (Docket Entry 9) is **STRICKEN.** As a result, the Clerk shall enter a default against Defendant under Federal Rule of Civil Procedure 55(a).

**IT IS FURTHER ORDERED** that Plaintiff shall file a motion for default judgment under Federal Rule of Civil Procedure 55(b)(2) on or before February 16, 2018.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 16(f)(2), Defendant and its counsel shall pay the reasonable expenses, including attorney's fees, incurred by Plaintiff in connection with the pretrial conference on December 22, 2017. To establish the amount of such expenses:

(1) On or before February 16, 2018, Plaintiff shall serve Defendant with a statement of the reasonable expenses, including attorney's fees, Plaintiff incurred in connection with the pretrial conference on December 22, 2017. Failure by Plaintiff to comply with this order will result in the denial of any such expense-shifting.

(2) If Plaintiff timely serves Defendant with such a statement of reasonable expenses, Defendant shall file, on or before March 2, 2018, EITHER (A) a notice that Defendant and its counsel consents

to the reasonableness of the expenses claimed in the statement served by Plaintiff (with a copy of that statement attached), OR (B) a brief of not more than five pages (excluding attachments) setting forth any argument challenging the reasonableness of the claimed expenses, along with a certification that Defendant has conferred in good faith with Plaintiff in an attempt to resolve that dispute. Failure by Defendant to comply with this order will result in the granting of expense-shifting to Plaintiff, as claimed in the statement of reasonable expenses served on Defendant, upon Plaintiff's filing of that statement with the Court.

(3) If Defendant timely files a brief contesting the reasonableness of Plaintiff's claimed expenses, Plaintiff shall file, on or before March 9, 2018, a brief of not more than five pages (excluding attachments) responding to Defendant's brief. Failure by Plaintiff to comply with this order will result in denial of expense-shifting to the extent contested by Defendant.

(4) If Plaintiff timely files such a response brief, Defendant may file, on or before March 16, 2018, a reply brief of not more than three pages (excluding attachments).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 2, 2018